IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:25-CV-00373-KDB-DCK

| | |
|---|---|
| CHRISTINA EGAN,<br><br>Plaintiff,<br><br>v.<br><br>BALLANTYNE COUNTRY CLUB,<br><br>Defendant. | **MEMORANDUM AND ORDER** |

Plaintiff Christina Egan is a former employee of Defendant Ballantyne Country Club ("BCC"). She alleges that BCC engaged in numerous Title VII violations and constructively discharged her after she reported being sexually harassed by the company's chief operating officer. Now before the Court is BCC's Motion to Dismiss (Doc. No. 12) Egan's Amended Complaint. The Court has carefully considered this motion and the parties' briefs and exhibits. For the reasons discussed below, the Court will **GRANT** the motion.

### I.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court,

1

however, accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cty., N. Carolina*, No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

When deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). The Court may also consider documents attached to a motion to dismiss when they are "integral and explicitly relied on in the Complaint," and where "plaintiffs do not challenge [the document's] authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015).

## II. FACTS AND PROCEDURAL HISTORY

After working for BCC for several years, Egan learned from a colleague in January 2025, that BCC's Chief Operating Officer Owen Dougherty had made sexually explicit comments[1] about her to other members of leadership—including to her direct supervisor (and Dougherty's

---

[1] Egan asserts that a colleague reported to her that Dougherty made two comments about her, including, "I can't stop having sexual dreams about Christina," and "When I'm in bed next to my wife, I masturbate to pictures of Christina." Doc. No. 10 ¶ 17.

2

subordinate), Matthew Saggio—sometime before December 2024. Doc. No. 10-1 at 2. Also in January, Egan learned that Dougherty had called a BCC board member a "bitch" and stated he would "f**k her sideways." *Id.*

Egan "immediately" reported the alleged sexual harassment to Human Resources ("HR") in mid-January 2025, and expressed concern that Saggio and others had not reported to the department or otherwise opposed Dougherty's comments. Doc. Nos. 10 ¶¶ 23, 26; 10-1 at 2. Egan alleges that HR took no action against Dougherty or the individuals who heard, but did not report Dougherty, in response to her report. *Id.* Therefore, on or about January 17, 2025, Egan also reported her concerns to BCC Board President Kevin Sullivan, who she alleges took no action other than to tell her to discuss her concerns about Saggio's lack of reporting directly with Saggio. Doc. No. 10-1 at 3. Egan also alleges that despite these reports, BCC allowed Dougherty to continue to work closely with her, and that it failed to put any protective measures in place. Doc. No. 10 ¶ 33.

However, Dougherty's employment at BCC was terminated shortly after Sullivan's conversation with Egan, and the termination was promptly reported to her. Despite his termination, and notwithstanding Egans's concerns about having to "work" with him at the event, Dougherty was nevertheless permitted to attend a business conference the following month because BCC had already paid for his registration. Doc. Nos. 10 ¶¶ 35–36; 10-1 at 3. Egan alleges that after his termination, Dougherty contacted her to invite her to attend a dinner on the first day of the event, and that she felt so uncomfortable knowing Dougherty would be attending that she canceled her trip. *Id.*

Egan further alleges that despite Dougherty's termination, she felt "unsafe, uncomfortable, and humiliated" at work because other employees discussed Dougherty's comments. Doc. No. 10

3

¶¶ 22, 48. Moreover, even though he failed to take any action after Dougherty made the allegedly sexually inappropriate comments about Egan, Saggio was promoted to General Manager. *Id.* ¶ 44. As a result of these events, and her ongoing feelings of emotional distress and mental anguish, Egan contends that she was forced to terminate her employment in February 2025. *Id.* ¶¶ 49, 79.

After filing a Charge of Discrimination for sexual harassment, sex discrimination, and retaliation with the Equal Employment Opportunity Council ("EEOC"), and receiving a Right to Sue notice, *see* Doc. No. 10-1 at 1–3, Egan initiated the present action against BCC, asserting claims of hostile work environment, sexual harassment, retaliation, and sex discrimination. Doc. No. 10 at ¶¶ 50–86. BCC timely filed a motion to dismiss, to which Egan responded. *See* Doc. Nos. 12, 18. The matter is now ripe for this Court's review.

### III.   DISCUSSION

The Federal Rules of Civil Procedure do not impose a "heightened pleading standard in employment discrimination suits." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). Thus, although "a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss," the complaint must still contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (internal citations omitted); *accord McCleary–Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015).

Accordingly, Egan's claims are evaluated under the ordinary plausibility standard applicable at the Rule 12(b)(6) stage. *See Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) (explaining that, although a plaintiff need not plead a prima facie case of discrimination to withstand dismissal, the complaint must nonetheless satisfy the plausibility requirements set forth in *Twombly* and *Iqbal*).

## A. Constructive Discharge

Although Egan does not plead a standalone constructive discharge claim, she alleges throughout her Amended Complaint that BCC effectively forced her resignation when it failed to remedy Dougherty's continual sexual harassment toward her and by allowing him to continue to work with her during the brief period between her report and his termination.

"Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Lee v. Belvac Prod. Mach., Inc.*, No. 20-1805, 2022 WL 4996507, at *3 (4th Cir. Oct. 4, 2022) (first quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004); and then citing *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021) ("Constructive discharge is an adverse employment action.")). To plausibly allege constructive discharge, a plaintiff must satisfy two elements: "First, a plaintiff must show that [her] working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign. Second, a plaintiff must actually resign because of those conditions." *Id.* (quoting *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211–12 (4th Cir. 2019)).

Intolerability requires more than alleging that resignation appeared to be the wisest or most desirable option, or that the employee "subjectively felt compelled" to leave. *Perkins,* 936 F.3d 196 at 212 (citation omitted). Instead, the inquiry is objective: "whether a reasonable person in the employee's position would have felt *compelled* to resign, … that is, whether [s]he would have had *no choice* but to resign." *Id.* (quoting *Blistein v. St. John's Coll.*, 74 F.3d 1459, 1468 (4th Cir. 1996), *overruled on other grounds by Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998)) (internal quotation marks omitted). *See also Decoster v. Becerra,* 119 F.4th 332, 340 (4th Cir.

5

2024). As the Fourth Circuit has emphasized, "[d]ifficult or unpleasant working conditions … without more, are not so intolerable as to compel a reasonable person to resign." *Id.*

Egan alleges "continuous" sexual harassment that BCC failed to remedy, but she identifies only two comments made by Dougherty during his employment, a single dinner invitation Dougherty made after his termination (conduct that by her own pleading was no longer imputable to BCC), and a rude comment directed at a female BCC board member. Although Egan asserts that BCC failed to take corrective action, she simultaneously acknowledges that BCC terminated Dougherty promptly after her reports.

In addition, Egan alleges that she continued to work closely with Dougherty during the short period of time between her learning of and reporting the harassment and his mid-January termination. However, she does not allege any further harassing conduct by Dougherty during this period. While BCC could have taken interim steps to separate them during its investigation, Dougherty was terminated within days of Egan's report.

Considered together, these allegations do not plausibly show that BCC rendered Egan's working conditions so intolerable that a reasonable employee would have felt compelled to resign, particularly where Egan's resignation did not occur until more than three weeks after Dougherty's termination and there are no allegations of further harassment after she reported Dougherty to HR and the Board.

### B. Hostile Work Environment

Turning to Egan's first denominated claim, she alleges that Dougherty's comments to two male directors—describing his sexual fantasies involving her—and a crude remark directed at a female BCC board member created a sexual harassment based hostile work environment.

6

Title VII prohibits an employer from discharging or discriminating against an individual "with respect to h[er] compensation, terms, conditions, or privileges of employment" because of their sex. *Laurent-Workman v. Wormuth*, 54 F.4th 201, 210 (4th Cir. 2022) (quoting 42 U.S.C. § 2000e–2(a)). An employer therefore violates Title VII "when it subjects an employee to a hostile work environment." *Id.* (citing *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276–77 (4th Cir. 2015) (en banc)). A work environment is hostile when it is "permeated with discriminatory intimidation, ridicule, and insult" of such severity or pervasiveness that it "alter[s] the conditions of the victim's employment and create[s] an abusive working environment." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)).

To state a hostile work environment claim based on sexual harassment, a plaintiff must plausibly allege: (1) the plaintiff was subjected to unwelcome conduct; (2) the conduct was based on the plaintiff's sex; (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (4) the conduct is imputable to the employer. *Bazemore v. Best Buy*, 957 F.3d 195 (4th Cir. 2020) (citing *Boyer-Liberto,* 786 F.3d at 277).

BCC concedes, for purposes of this motion, that Egan has plausibly alleged the first two elements. It argues, however, that the Amended Complaint fails to allege facts satisfying the third and fourth elements. The Court agrees. Even assuming (without deciding) that Egan was subjected to unwelcome conduct based on her sex, the Amended Complaint contains a dearth of factual allegations suggesting that Dougherty's conduct was sufficiently severe or pervasive to alter the conditions of her employment.

Although severity or pervasiveness is often a question of fact, dismissal is appropriate where the complaint fails to allege facts that, if true, would meet this standard. *Sunkins v. Hampton*

*Roads Connector Partners*, 701 F. Supp. 3d 342, 352 (E.D. Va. 2023). The Fourth Circuit has emphasized that plaintiffs must clear a "high bar" to satisfy this test. *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). To be sure, a single incident may be sufficiently severe to constitute actionable harassment. *Berry v. S. States Coop., Inc.*, No. 5:17-CV-635-FL, 2018 WL 4365499, at *2 (E.D.N.C. Sept. 13, 2018) (citing *Boyer-Liberto,* 786 F.3d at 280–81). But "simple teasing, offhand comments, and off-color jokes, while often regrettable, do not cross the line into actionable misconduct." *E.E.O.C. v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 328 (4th Cir. 2010). And although misconduct by a supervisor generally carries greater weight, *Sunkins,* 701 F. Supp. 3d at 354 (citing *id.* at 329), the conduct must still meet the governing standard. *See Boyer-Liberto*, 786 F.3d at 278 (explaining that the status of the harasser may be a "significant factor" because "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character.").

The "severe or pervasive" inquiry contains "both subjective and objective components." *Sunkins,* 701 F. Supp. 3d at 353 (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)) (additional citations omitted). Egan plainly alleges that she subjectively perceived Dougherty's conduct as hostile. The Court therefore focuses on the objective component—whether a "reasonable person" in Egan's position "would have found the environment hostile or abusive." *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81–82 (1998)) (internal quotations omitted). *See also Irani v. Palmetto Health*, 767 F. App'x 399, 416 (4th Cir. 2019). This determination requires consideration of the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23).

As alleged, the conduct here does not rise to the level of being "severe or pervasive" under the governing authorities. Egan identifies only two sexually charged comments, made to two colleagues outside of her presence. She does not allege that Dougherty ever made comments or overtures to her directly while he was employed by BCC, including during the brief period between her learning of the remarks, reporting them, and Dougherty's termination.[2] And the dinner invitation—which Egan characterizes as a sexual proposition—occurred only after BCC had terminated Dougherty.

In sum, taken as true together with all inferences favorable to Egan, these allegations do not plausibly describe conduct that was severe or pervasive enough to alter the conditions of Egan's employment. Accordingly, the hostile work environment claim will be dismissed without prejudice.

---

[2] *Compare Jones v. Tyson Foods, Inc.,* 378 F. Supp. 2d 705 (E.D. Va. 2004), *aff'd sub nom. Jones v. Tyson Foods*, 126 F. App'x 106 (4th Cir. 2005) (finding a supervisor's alleged conduct of asking employee if she would go out with him, stating he wanted to kiss her, grabbing her buttocks, pressing his pelvic area into hers, and simulating sexual intercourse, not severe or pervasive enough to create hostile work environment because no other incidents were alleged and employer took reasonable measures to prevent re-occurrence); *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745 (4th Cir. 1996) (explaining that a supervisor's alleged harassment by sexual innuendos, jokes, and physical contact did not create a sufficiently hostile work environment), *with Okoli,* 648 F.3d at 220–22 (claims of repeated propositioning—12 incidents in four months—and physical touching by a male boss to a female subordinate sufficient to allege hostile work environment); *Beardsley v. Webb,* 30 F.3d 524, 529 (4th Cir. 1994) (finding hostile work environment where over a period of six months, a supervisor massaged an employee's shoulders, stated he wanted to "make out" and "have his way" with her, falsely accused her of having an affair with a colleague, asked her about her underwear and birth control, and made comments about taking maternity leave); *Twine v. AT&T, Inc.*, 755 F. Supp. 3d 959, 977–79 (E.D. Va. 2024) (finding a female subordinate's claims that a male supervisor repeatedly leered at her, asked about her marriage, stated that her "husband must be happy," and commented on her appearance before implicitly propositioning her for sex had plausibly alleged sufficiently severe or pervasive harassment to survive a motion to dismiss); *Whitten v. Fred's, Inc.*, 601 F.3d 231, 243 (4th Cir. 2010), *abrogated on other grounds by Vance v. Ball State Univ.*, 570 U.S. 421 (2013) (finding two-day period consisting of verbal abuse and two incidents of supervisor pressing his genitals against plaintiff's body to be sufficiently severe).

### C. Quid Pro Quo Sexual Harassment

In her next claim, Egan alleges that BCC violated Title VII when Dougherty made sexually explicit comments about her to other members of the management team and later invited her to dinner—after his termination—at a business event both were scheduled to attend. As courts have explained, "[q]uid pro quo sexual harassment occurs when a supervisor demands sexual consideration in exchange for job benefits," *Twine v. AT&T, Inc.*, 755 F. Supp. 3d 959, 972 (E.D. Va. 2024) (quoting *Katz v. Dole,* 709 F.2d 251, 254 (4th Cir. 1983)) (citation and internal quotation marks omitted), and "consists of conditioning employment benefits upon the employee's submitting to the sexual advances or threatening adverse employment actions if the employee does not submit." *Schulze v. Meritor Auto.*, 163 F. Supp. 2d 599, 610 (W.D.N.C. 2000).

To state such a claim, a plaintiff must plausibly allege: (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment occurred because of her sex; (4) her response to the harassment affected a tangible aspect of her "compensation, terms, conditions, or privileges of employment;" and (5) "the employer knew or should have known of the harassment" and failed to take remedial action. *Twine,* 755 F. Supp. 3d at 972 (quoting *Nixon v. Kysela Pere et Fils, Ltd.*, No. 22-1406, 2024 WL 3666166, at *5 (4th Cir. Aug. 6, 2024)) (citation omitted).

A "tangible employment action" refers to a significant change in employment status, including "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Okoli,* 648 F.3d at 222 (quoting *Burlington Indust., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998)). Perhaps the clearest example of quid pro quo harassment is when a supervisor tells a subordinate, "I will fire you unless you sleep with me." *Briggs v. Waters*, 484 F. Supp. 2d 466, 479 (E.D. Va. 2007) (citation omitted).

10

Here, Egan has plausibly alleged the first three elements of a quid pro quo sexual harassment claim. However, Egan has not plausibly alleged the remaining elements. Egan asserts that Dougherty, by virtue of his supervisory role, had the ability to control the terms and conditions of her employment. But she does not allege that he, or BCC, ever exercised that authority in a manner that altered, threatened, or even implicated any concrete term or condition of her employment.

Egan further contends that her "*reaction* to the alleged sexual harassment affected tangible aspects of her employment." Doc. No. 10 ¶ 56 (emphasis added). Yet the only reactions she identifies are feeling humiliated and choosing to report the conduct and later resign. Although she characterizes her resignation as a constructive discharge, she pleads no facts, as explained above, to suggest that BCC rendered her working conditions so intolerable that a reasonable employee in her position would have felt compelled to quit. Instead, she offers only the conclusory assertion that she was "forced to work in a hostile work environment" and therefore "forced" to resign. Doc. No. 10 ¶ 48.

Egan likewise fails to allege that BCC failed to take remedial action in response to her report. To the contrary, the Amended Complaint reflects that the company acted promptly and decisively by terminating Dougherty shortly after receiving her complaint.[3] Accordingly, Egan's claim of quid pro quo discrimination will be dismissed without prejudice.

---

[3] Title VII does not mandate any particular remedial action an employer must take in response to allegations of sexual harassment. *Bazemore,* 957 F.3d at 201. "[I]t is enough for an employer to take action reasonably calculated to stop the harassment." *Id.* (quoting *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 498 (4th Cir. 2015)).

**D. Retaliation**

Next, Egan alleges that BCC retaliated against her by "requiring her to continue to work in a sexually hostile environment," because Dougherty was allowed to continue working with her for a short period of time after she reported him for sexual harassment.

To state a claim for retaliation, a plaintiff must demonstrate: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman,* 626 F.3d at 190. Again, an adverse employment action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus.,* 524 U.S. at 761). In addition, the plaintiff must show that a reasonable employee would have viewed the challenged action as "materially adverse"—that is, an action that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington Northern and Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006)) (internal quotations and additional citations omitted).

Although Egan need not plead facts establishing a prima facie case to withstand a motion to dismiss, she must still allege facts sufficient to raise her right to relieve beyond "[a] speculative level." *Coleman,* 626 F.3d at 190 (citations omitted); *see also McCleary–Evans,* 780 F.3d at 585. BCC contends that Egan has failed to plausibly allege retaliation. The Court agrees.

Egan asserts that BCC "intentional[ly] and reckless[ly]" failed to remedy the "continuous sexual harassment" she experienced, forcing her to terminate her employment.[4] While Egan

---

[4] The Court finds it unlikely that two sexually inappropriate comments by a supervisor amount to "continuous" sexual harassment. If Egan had additional facts that would support her

engaged in a protected activity when she reported Dougherty's conduct, she has not plausibly alleged that she suffered an adverse employment action as a consequence of the reporting. The only purported adverse action is her alleged constructive discharge, which, as explained above, is not supported by facts showing that BCC made her working conditions so intolerable that a reasonable employee would have felt compelled to resign.

Nor does Egan identify any other conduct by Dougherty following her report that could constitute an adverse employment action, much less one taken because of her protected activity. Indeed, she alleges Dougherty was terminated not long after her complaint. Thus, she has not plausibly alleged retaliatory animus. This claim will therefore be dismissed without prejudice.

**E. Sex Discrimination**

In her final claim, Egan alleges that BCC discriminated against her on the basis of sex by subjecting her to harassment, creating a hostile work environment, denying her "equal protections" under company policy, and forcing her to resign. *See* Doc. No. 10 ¶¶ 83–84.

Absent direct evidence of sex discrimination, a plaintiff must show that "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) her performance met her employer's legitimate expectations at the time of the adverse employment action, and (4) the action occurred under circumstances permitting a reasonable inference of sex discrimination." *Boney v. Trustees of Cape Fear Cmty. Coll.*, 366 F. Supp. 3d 756, 764 (E.D.N.C. 2019).

As noted, in the context of a motion to dismiss, a plaintiff need only plausibly allege a statutory claim, along with facts that permit a reasonable inference that discriminatory animus was at least one motivating factor. *Boney*, 366 F. Supp. 3d at 764–65 (first citing *McCleary–Evans,*

---

allegation of continual sexual harassment, she should have pled them with specificity. Generalized assertions are insufficient to state a claim above a speculative level.

780 F.3d at 585–88; and then citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013); and then citing *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). Still, conclusory assertions of a causal connection are insufficient. *Boney,* 366 F. Supp. 3d at 764 (citing *McCleary-Evans,* 780 F.3d at 585–86) (citation omitted).

Here, as with her retaliation claim, Egan's sex discrimination claim fails because she has not plausibly alleged any change in the terms, conditions, or privileges of her employment—or any action by BCC that materially affected her employment status, let alone was "so discriminatory that a reasonable person in her position would have felt compelled to resign."[5] *El-Reedy v. Abacus Tech. Corp.*, 273 F. Supp. 3d 596, 603–04 (D.S.C. 2017). Absent such allegations, she cannot state a plausible claim of sex discrimination. Accordingly, this claim will be dismissed without prejudice.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss (Doc. No. 12) is **GRANTED**;
2. Plaintiff's claims are DISMISSED without prejudice; and
3. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: February 10, 2026

Kenneth D. Bell
United States District Judge

---

[5] Although Egan alleges that she was denied "equal protections" under company policies and procedures, she fails to allege that male colleagues in her situation were treated differently. Moreover, she does not allege disparate treatment in her EEOC complaint, or in her Amended Complaint, beyond a single conclusory sentence. *See* Doc. No. 10; 10-1.